IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| David Lynn O'Shields, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 0:12-2327-RMG |
| vs. ) | |
| ) | |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of Social Security, ) | **ORDER** |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff has brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB"). In accord with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation ("R & R") on January 17, 2014, recommending that the Court reverse the decision of the Commissioner. (Dkt. No. 26). The Commissioner has advised the Court she does not intend to file any objections to the R & R. (Dkt. No. 29). As more fully set forth below, the Court reverses the decision of the Commissioner and remands for further action consistent with this order.

**Legal Standard**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is

made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

**Factual Background**

Plaintiff alleges that he suffered disabling injuries as a result of a fall from a ladder in May 2007. Plaintiff was diagnosed with a "displaced comminuted burst fracture of the anterior 2/3 of the calcaneus with fracture line extending into the posterior subtalar and calcaneal cuboid joints." Tr. 387. Plaintiff underwent an open reduction internal fixation ("ORIF") procedure on June 12, 2007. Plaintiff thereafter complained to his treating orthopaedist, Dr. Scott Broderick, that he was experiencing severe pain that was altering his life. Tr. 389-90. Dr. Broderick noted

-2-

in his record that patients with Plaintiff's injury "can have life long problems" with their injured foot but the degree of the claimant's pain was "unusual." Tr. 389. Dr. Broderick documented that Plaintiff had most pain when walking but also had pain when at rest. Tr. 390. He also wrote that Plaintiff "is unable to really stand up for any time longer than an hour." Tr. 390.

When Plaintiff's pain persisted, Dr. Broderick referred him to another orthopaedist, Dr. Thomas Anderson, for a second opinion. Tr. 389. After attempting various conservative treatments that provided Plaintiff minimal relief from his lower extremity pain, Dr. Anderson took Plaintiff back to surgery on May 8, 2009, to remove the hardware from the ORIF procedure and to fuse the subtalar joint. Tr. 478-82, 484, 488, 490, 528, 532, 644, 682. Following the ankle fusion surgery, Plaintiff continued to complain of severe pain that was so great that he questioned whether his foot should be amputated to provide him relief. Dr. Anderson attempted various injections, medications, and physical therapy to provide Plaintiff pain relief. This reduced the pain to some degree but it remained severe and persistent. Tr. 540-41, 546, 658, 672-73, 677-78, 710. Dr. Anderson noted that Plaintiff's pain occurred primarily when the patient was weight bearing. Tr. 668. In an effort to find some relief for Plaintiff, Dr. Anderson asked one of his partners, Dr. Brian Weatherby, an orthopaedist, to evaluate Plaintiff. Dr. Weatherby found that Plaintiff had a "moderate amount" of postoperative traumatic arthritis in the ankle joint and concluded that the pain was arising from the ankle joint. Tr. 669-70.

Plaintiff was referred to pain management physicians who experimented with a broad range of potent narcotics to provide him relief. After finding that Lortab and other medications were not sufficient, Plaintiff was prescribed Fentanyl pain patches and additional medications for breakthrough pain. Tr. 692-93, 702, 707, 708. These medications provided Plaintiff some relief.

For instance, Dr. Dwight Jacobus, one of the pain management physicians, noted once that Plaintiff's pain on a ten point pain scale was 10/10 without medicine and 5/10 with medicine. Tr. 687. Based on his treatment experience with Plaintiff, Dr. Jacobus concluded that Plaintiff would likely have "considerable pain if he tried to stand and walk more than briefly during the work day." Tr. 760.

Dr. Jacobus and other treaters noted that Plaintiff's persistent and severe pain was adversely affecting his mental health and making him depressed. Tr. 655, 684, 687, 747, 752, 822-23. Dr. Donald Hinnant, a treating psychologist, documented Plaintiff as stating that "a bullet in the head would be better than putting up with this pain." Tr. 752. Plaintiff's treaters also documented various side effects of Plaintiff's narcotic medicine regime, including drowsiness, constipation, and shaking hands. Tr. 690, 783.

Plaintiff's medical records were reviewed by three physicians evaluating his lower extremity injury. Dr. Carl Anderson, who has not examined or treated Plaintiff, prepared a report on March 17, 2009, concluding that Plaintiff could sit or stand six hours per day and lift ten pounds frequently. Tr. 515. Dr. Anderson noted Plaintiff's claim to be able to stand only thirty minutes to an hour but found that statement only "partially credible." Tr. 519. Dr. Anderson's evaluation was performed before Plaintiff's May 2009 ankle fusion procedure, and Dr. Anderson did not have the subsequent years of orthopaedic, pain management, and psychological records to review at the time of his report.

Dr. Elva Stinson performed her chart review of Plaintiff's records on January 22, 2010, and, like Dr. Anderson, had no examining or treatment history with Plaintiff. She concluded Plaintiff could lift ten pounds regularly and sit for six hours but concluded Plaintiff was not

capable of standing for six hours in an eight-hour day. Tr. 606. Instead, Dr. Stinson could only certify that Plaintiff could stand or walk, with normal breaks, at least two hours in an eight-hour day. Tr. 606.

On April 2, 2009, prior to the ankle fusion surgery, Dr. Glenn Scott, a consulting physician, examined Plaintiff. Dr. Scott expressed agreement with Dr. Anderson's proposed ankle fusion procedure because he saw no other conservative treatment that would likely benefit Plaintiff. Tr. 614-15. He opined that Plaintiff was capable of "light physical demand work" but would need to be limited "to sit for a majority of the work day." Tr. 615.

A hearing was conducted in this matter on January 19, 2011, before the Administrative Law Judge ("ALJ"). Plaintiff testified regarding his difficulties with chronic pain, side effects of his medications, depression, and physical limitations. Tr. 98-104. He stated that he could sit perhaps two hours per day and stand a total of one hour in an eight-hour workday. Tr. 105-06.

The ALJ issued a decision on April 11, 2011, finding that Plaintiff had not engaged in any employment since his fall from the ladder in May 2007 and that he had severe impairments of right calcaneal fracture and depression. Tr. 69. He further concluded that Plaintiff did not satisfy any Listings at Step Three and that he retained a residual functional capacity for light work. Tr. 72. However, in reaching the conclusion that Plaintiff was capable of performing light work, the ALJ found that he could stand or walk two hours in an eight-hour workday and sit with normal breaks for six hours. Tr. 72. The ALJ concluded, based upon the testimony of a vocational expert, that there were sufficient jobs in the national marketplace for Plaintiff with the limitations set forth in the decision and determined that he was not, therefore, disabled under the Social Security Act. Tr. 81.

Following the ALJ's decision, Plaintiff timely filed a request for review with the Appeals Council and submitted a number of additional medical records. Tr. 6. Included in these new medical records was the results of an electromyogram ("EMG") performed on June 2, 2011. The EMG results were interpreted by Dr. Erik Sinka, D.O., who is board certified by the American Board of Psychiatry and Neurology as well as the American Board of Electrodiagnostic Medicine. Tr. 787. Dr. Sinko diagnosed abnormalities in three different nerves in Plaintiff's right lower leg, foot, and ankle. These included the right sural nerve, the right superficial peroneal nerve, and the right deep peroneal nerve "localized to or near the ankle." Tr. 787. Dr. Sinko concluded that "[t]hese finding[s] are consistent with the patient's clinical history of severe right ankle/ foot trauma." Tr. 787.

These EMG findings of multiple traumatic nerve injuries in and around Plaintiff's ankle and foot had not been previously diagnosed or suspected in the record and certainly provided an additional potential explanation for Plaintiff's persistent complaints of severe pain. Dr. Sinko also expressed the opinion that these injuries were likely secondary to Plaintiff's traumatic ankle injury that occurred in 2007. The Appeals Council, in its decision denying review, made no specific reference to this EMG study but dismissed the entire volume of the records submitted with the EMG study as being records which "concern a time after your decision." Tr. 2.

Plaintiff timely appealed the adverse decision in this matter to the District Court, which by routine referred the matter to the Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation on January 17, 2014, recommending that the Commissioner's decision be reversed because the credibility analysis performed by the ALJ was not supported by substantial evidence. (Dkt. No. 26 at 6-10). The Commissioner timely filed

objections to the Magistrate Judge's Report and Recommendation.

## Discussion

### A. Failure of the fact finder to weigh the new and material evidence submitted to the Appeals Council and reconcile it with conflicting and supporting evidence in the record

A claimant in a Social Security proceeding is permitted to submit new and material evidence after the administrative hearing to the Appeals Council and that evidence is made part of the administrative record. 20 C.F.R. § 404.970(b). The Appeals Council is required to review the new and material evidence so long as it "relates to the period on or before the date of the administrative law judge hearing decision." *Id.* Although Social Security regulations do not require the Appeals Council to make any findings regarding the newly submitted evidence, the Fourth Circuit in *Meyer v. Astrue*, 662 F.3d 700, 706-07 (4th Cir. 2011), concluded that substantial evidence review by a district court is not possible in the absence of findings by the fact finder on the newly submitted evidence where the evidence is not "one sided" and the newly submitted evidence conflicts with other evidence credited by the Commissioner. In such a situation, the district court must reverse and remand to allow the fact finder to weigh the new and material evidence and to reconcile it with the conflicting and supporting evidence in the record. *Id.* The Fourth Circuit noted that "[a]ssessing the probative value of competing evidence is quintessentially the role of the fact finder. We cannot undertake it in the first instance." *Id.*

The EMG results are certainly new and material and conflict with the findings of the ALJ, which discounted the testimony of Plaintiff and his treating physicians on the basis of the alleged lack of objective evidence to support his complaints of severe pain. The fact that Plaintiff had traumatic injuries to three separate nerves in and around his right foot and ankle, in the area of

-7-

the severe pain, must be weighed with the other diagnostic findings, clinical evaluations, expert opinions, and other evidence in the record.

The Appeals Council dismissed the EMG, along with other medical records that were produced post the administrative hearing, on the basis that they "concern a time after your decision." Tr. 2. It is well settled in the Fourth Circuit, however, that evidence produced after the relevant time period under review may be considered retrospectively if it can be linked to the claimant's condition during the relevant time period. *Bird v. Comm'r of Soc. Sec.*, 699 F.3d 337, 340-41 (4th Cir. 2012). The EMG results expressly referenced Plaintiff's traumatic injury which occurred in 2007 and was the critical injury that gave rise to the claim of disability. Tr. 787.

Reversal and remand are mandated here for the ALJ to weigh the findings of the EMG and to reconcile those findings with the other supporting and conflicting evidence in the record. This will require a reconsideration of the ALJ's findings at Step Three and every step thereafter, including the analysis of Plaintiff's credibility and the weight given the opinions of the various expert witnesses. The ALJ is reminded that the opinions of all expert witnesses should be conducted pursuant to the standards of the Treating Physician Rule, which provides greater weight and deference to the opinions of treating, examining, and specialist physicians. 20 C.F.R. § 404.1527(c).

### B. The finding of the ALJ that a claimant limited to standing or walking two hours in an eight-hour workday is capable of performing light work

The ALJ found that Plaintiff was limited to walking or standing, with normal breaks, for two hours in an eight-hour workday. Tr. 72. Nonetheless, the ALJ found that Plaintiff possessed the residual functional capacity for light work. Tr. 72. This finding is inconsistent

with SSR 83-10, 1983 WL 31251 (1983), which provides that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday." *Id.* at *6. *See also Poupore v. Astrue*, 566 F.3d 303, 305 (2nd Cir. 2009); *Allen v. Sullivan*, 977 F.2d 385, 390 (7th Cir. 1992). On the other hand, a claimant who is capable of sitting six hours a workday and standing or walking two hours per workday is limited to sedentary work. 1983 WL 31251, at *5.

The Court hereby reverses the finding that Plaintiff is capable of performing light work since the ALJ found that the claimant could stand or walk only two hours in the normal eight-hour workday. Tr. 72. On remand, the Commissioner should promptly review whether Plaintiff's limitation to sedentary work results in Plaintiff being deemed disabled pursuant to the provisions of Medical Vocational Rule 201.10, 20 C.F.R. Part 404, Subpart P, Appendix 2. If Plaintiff is not deemed disabled because of his age, sedentary work level, and physical limitations, the Commissioner will need to reassess Plaintiff's disability claim in light of the full record and controlling legal standards.

### C. The lack of substantial evidence to support the ALJ's credibility finding

The Magistrate Judge recommended that the Court reverse the decision of the Commissioner on the basis that the ALJ's credibility analysis was not supported by substantial evidence. Having reviewed the Report and Recommendation, the Commissioner's objections, and the record in this matter, the Court finds that the Magistrate Judge has ably and correctly addressed the legal and factual issues surrounding the ALJ's credibility analysis. Therefore, the Court adopts Section A of the Magistrate Judge's Report and Recommendation (Dkt. No. 26 at

6-10) as the order of this Court. This provides an additional independent basis for reversal and remand of the Commissioner's decision.

## Conclusion

Based on the foregoing, the Court hereby reverses the decision of the Commissioner, pursuant to 42 U.S.C. § 405(g), and remands the matter to the Commissioner for further action consistent with this order.

AND IT IS SO ORDERED.

Richard Mark Gergel
United States District Judge

February 1, 2014
Charleston, South Carolina